v. United States v. Sedano. Thank you. All right, good morning Mr. Donovan. You have reserved two minutes for rebuttal. I'll give you three minutes at the gate. You may proceed. I'm so sorry, I'm having a hard time hearing you. Can you make sure I can hear you? All right. Yes, but aren't we bound to give the district court, in this case Judge Crawford was very careful, went down a whole lot of things. With respect to the Wedderburn one, that's the hardest. There's the least witnesses there. But on the others, it does seem to be essentially a credibility issue of witnesses. The Wedderburn one might make a difference, but would not make a difference in the guidelines. So aren't we in a situation in which, frankly, we'd have to second guess what a district judge did very, very carefully? And back to your original why it's a difficult case for you to argue. And hard to brief too. It's so factually intense. And if I were a court of appeals judge, I would not want to have to slog through my brief, and the government does a good job slogging through it as well, trying to figure out these calculations. I mean, I can't imagine Henry or Leonard would want to go through this. They want to deal with the big issues. But you do have to second guess, and that's why I'm here, and I've tried to do the best I can. Right, but in that second guessing, we have to be left with a definite and firm conviction that a mistake has been committed. And I'm asking with all the witness statements that were relied on, and the fact that they generally corroborate each other, what do you have to tell me that I have a definite and firm conviction that a mistake was made? Well, the difficulty is that they don't really confirm each other. So, for example, as Judge Calabresi said- And that really doesn't leave me with a definite and firm conviction that it was wrong, right? Okay, let's take Wedderburn. Wedderburn says that he took eight to ten trips up to Vermont, and Mariani would drive him. And on two of those trips, Sedanios, who apparently didn't have much of a means of transportation, came with them. And then he was asked during his testimony, he actually testified, each time you'd go up, how much would you bring? And he said they would take an ounce of cocaine base and two stacks of heroin. He didn't say- that's what he and Mariani are bringing up. He didn't say he saw Sedanios with it. Okay, so that's the first problem. The second problem is when you look at all these other witnesses, let's say you reject me on that. And you say, no, I mean, he could infer that Sedanios also- Remember, he didn't plead guilty to conspiracy. He pled guilty to, on the day of the raid, he possessed a certain amount of crack cocaine, and he had the intent to distribute it. So this is all relevant conduct. Now, suppose you reject me on that, and you say, no, I'm going to say that Sedanios had 56 grams of crack cocaine too. You don't know whether that crack cocaine was the same crack cocaine that Megan Blake was talking about, that Alice Parenteau was talking about. Nor do you know whether the amounts that the other witnesses are talking about- and the district court could have, on those grounds, said I have a problem with these witnesses. On the other hand, there was enough overlap of what each of them said, so that it's hard for me to say that when the district court, having looked at all of these things, says, yeah, I think this is about right, but that gives me a feeling that that's clearly wrong. Yeah, and it is true that the district court is permitted to make estimates, right? And it's also true that this district judge just didn't take what the government said. It actually said, I'm not going to find certain amounts. But I still think, Judge, that I won't go through each of the witnesses, but if you go through each of those things, you'll find enough to trouble you that- The trouble that we need to be troubled by is what I'm troubled by. The standard isn't trouble, it's that we're left with a definite and firm conviction that a mistake has been made. Right, and I think- I could give you trouble, but definite and firm conviction, that's what I'm trying to ask you to elicit. Right, and you should have a definite and firm conviction that you can't tell whether that amount that is being double-counted. Double-counted with whom? With which other witnesses? So he says, so it's 56 grams of cocaine. We've got various other witnesses saying that they saw that he had cocaine. So, for example- But even if we drop the Wedderburn, which is the most problematic because of double-counting, wouldn't that leave the guidelines exactly the same? And if that is so under our cases, then it's okay. The Wedderburn is the one that gives me trouble because it might be double-counting, and I might have a firm conviction, but that by itself doesn't flip me over the guidelines. You're asking a question more difficult than has ever been asked by somebody standing at this podium, because I can't do that math in my head. I just can't do it. I don't know. I'm hoping you'll find that certain other amounts should come out, and it will bring it below. If there were any other, then the Wedderburn might be enough for me because it would lower it below the guidelines, and the judge gave the bottom of the guidelines. So if the guidelines were lower, we could assume that maybe the judge would do differently. But if it's just the Wedderburn, it ain't enough. Do you want to move to the sentencing enhancement? With respect to the violence? Yeah. I mean, I think that the government established that he was in the room when Mariani slapped the victim. Mariani was apparently displeased because the victim had decided not to deal for him anymore. Okay, but why is the combination of Smith's original testimony that Sedano did physically hit Hutchins and the testimony of Sedano that they were an arm's length away support the enhancement? Yeah, I just think it's not strong enough to support the fact that he himself. Remember, these were two. This isn't one big conspiracy. These are different drug dealers dealing in different ways, and sometimes they cooperate. But isn't it the judge's responsibility to resolve disputed factual issues, including an assessment of credibility of witnesses? It is, and in order for me to persuade you differently, I've got to prove that he was clearly erroneous. But I just don't think that the evidence was strong enough that you can be left with the firm conviction that the Sedanos had anything to do with Mariani hitting of the witness. Thank you. All right, thank you. You have reserved a few minutes. We'll hear from Mr. Burris. Good morning, and may it please the court. My name is Nate Burris. I'm from the United States Attorney's Office in Burlington, Vermont. I'd like to start by discussing the drug quantity calculation, and then I'll briefly turn to the use of violence enhancement. As the court noted, the question for this court and the standard for its review is whether the district court's drug quantity calculation was clear error, and this court has described the standard as extremely deferential. It has said that its role is not to decide disputed factual issues de novo or to reverse simply if it would have decided the case differently. Rather, the clear error standard asks this court to determine whether the district court's account of the evidence is plausible in light of the record viewed in its entirety. Can you do some talking about the discrepancy between the amount in the plea agreement and the amount that the district court considered? I mean, that's a big jump, right? Seven times? Seven times more than what? I didn't see a number of cases that accounted for such a difference. Your Honor, federal sentencing is generally conduct-based rather than charge-based. Talk into that microphone, please. Federal sentencing, Your Honor, is conduct-based rather than charge-based, and so while the defendant's guilty plea was to a single count of possession with intent to distribute a relatively small quantity. May I ask the question of appropriate? I mean, are there cases where that sort of discrepancy has been upheld? Your Honor, I believe the summary of the defendant's argument did raise this point. The crux of the defendant's claim is with regard to specific instances of drugs that were accounted in the drug quantity calculation. And so I don't believe that particular issue was brief. So you think there's no limit between the quantity in the plea agreement and what they can actually be charged with when sentencing? You think that whatever the limit is, there's no limit to that? Your Honor, the district court was required to accurately calculate the guidelines. The district court's not bound by the plea agreement, right? Not at all, Your Honor. The district court is required to apply the guidelines, and the guidelines make clear that even drugs that are not specified in the count of conviction should be included in the drug quantity calculation. The guidelines, in fact, require the district court to approximate the relevant drug quantity where the quantities of- So your position is that it doesn't matter what the discrepancy is. It could be 900 times more. There's no limit on how the quantity- There's no amount of upper limit that would be appropriate for a district court to consider based on the discrepancy between the plea agreement and what they're being sentenced for. I'm not aware of any such limit in the guidelines which the district court is required to- But you don't deny that if the discrepancy was huge, we would look at the findings more skeptically. That is, there is no set limit. On the other hand, to the extent that it was really wild, we would look at what they found and say, hey, does this make sense, or do we have a confidence sure that this is wrong? Perhaps, Your Honor, but I would bring the court back to the clear error standard, and ultimately the question is whether the drug quantity calculation found by the district court was plausible in light of the record viewed in its entirety. I'd make several points in response to the defendant's efforts to winnow down the quantity of drugs attributable to him. First, the district court evaluated substantial evidence before it over a nearly full-day sentencing hearing, and in addition to the facts and evidence in the PSR, two witnesses testified at sentencing. There were nearly 20 exhibits admitted at this particular hearing, and where witnesses' drug quantity estimates were a range, the district court conservatively used a drug quantity calculation which applied the low end of any ranges. Additionally, the district court only counted drugs attributable directly to Mr. Sedano, not drugs distributed by his co-defendants and co-conspirators. The district court also evaluated information presented and in fact rejected some of the statements by certain witnesses, finding that these witnesses were not credible, and the district court did not include those quantities in its drug quantity calculation. There was also compelling evidence related to drug quantity that the district court did not even opt to rely on. And finally, at the end of all of these considerations, the district court imposed a sentence at the very low end of the applicable guidelines imprisonment range. Well, it's even more than that because the district court used a ratio that's different than the guidelines ratio for between crack and powder, right? That is correct, Your Honor. This, of course, resulted from a variance after that one-to-one ratio being applied. Now, the ultimate base offense level was 24, and this is the base offense level which applies where converted drug weight is between 100 and 400 kilograms, and the converted drug weight that was found by the district court was 274 kilograms. So even if we were to subtract 174 kilograms, a more than 50% reduction in drug quantity, there would be no change in the base offense level and therefore no change in the ultimate guidelines imprisonment range. I would note that the statements of just one witness, Ms. Kelly, led to approximately 200 kilograms of converted drug weight. And so if the court were to find that her testimony, her statements were plausible in light of the record viewed in its entirety, the drug quantity inquiry could end there. Thank you. Unless there are any further questions. Can I just clarify? Is it your position that Sedano physically assaulted Ms. Hutchinson or just that being arm's length away was sufficient? Which one is it that you all are? As Your Honor pointed out in your questioning of counsel, Mr. Smith, who testified at sentencing, initially testified before a federal grand jury, and before the grand jury, Mr. Smith swore that the defendant I mean, he retracted that, though, and so I'm trying to figure out what we're supposed to do with that and how that's supposed to fit into your analysis, which is why I'm asking the question. Is it your position that he actually hit Hutchins or is it your position that being close enough to him was enough for the enhancement? Well, I have two points, Your Honor. First, I don't believe that he retracted the statement. I believe his statement at sentencing was that he no longer recalled what happened. And I don't believe the district court relied on his grand jury testimony in applying the enhancement. I don't think it was necessary for the court to find that Mr. Sedano, in fact, struck the female. Is it your position that the enhancement applies just by being arm's length away? Your Honor, the government's position is that the enhancement applies based on the totality of the defendant's conduct, which goes beyond Now you confuse me. Okay, so a second ago, is the government's position, let's pretend that Smith didn't testify. Had he been an arm's length away, would that have been enough for the enhancement? Your Honor, I think the defendant's active participation went beyond merely standing an arm's length away. The district court So the government's position is that he didn't have to hit in order for That is correct, Your Honor. So long as he was sufficiently involved, he didn't actually have to hit. But you're not taking the position that simply being in the room would be enough without more Exactly, Your Honor. The district court found that Mr. Sedano played, to quote, a significant supporting role. And I would point to several actions by the defendant, Mr. Sedano, that support this enhancement. First, the defendant and his co-defendant drove to the female's apartment. The defendant, along with his co-defendant, aggressively confronted this female in order to get her to sell their drugs, including the defendant's. Then the defendant stood an arm's length away during the beating. And the defendant, along with the co-defendant, left this female with drugs to sell on their behalf. And to put this in further context, the defendant and the co-defendant later told the female that she owed them money for these drugs. And the defendant and the co-defendant later collected money from her. And so the government would suggest that these acts by the defendant were sufficient to justify the district court in applying the use of violence enhancement. Thank you. Unless there are any further questions, the government would rest on its written file. Thank you, Mr. Carvis. We'll hear from Mr. Donovan for two minutes of rebuttal. In my minute, I think I need just to refer you to the briefs because the factual situation here is so complicated. I can't say anything in a minute. I wonder if I could add just a personal note, though. In this brief, I finally had the opportunity in a footnote to use the phrase, de minimis non curat lex. And that's a phrase that I learned in first year law school when a law professor recited a limerick, which I can't repeat here, in which that phrase was used. And 55 years later, I have had the opportunity to put it in a brief. Thank you, Your Honor. Thank you, Mr. Donovan and Mr. Burris. We will reserve decision.